# Truesdell's Appeal.

1. Under a call for volunteers, a number of men were drawn to fill the quota of a township. Before they had been accepted, the supervisors, in pursuance of a previous resolution to pay bounties, paid for substitutes and laid a tax to meet the payment. *Held*, that the draft was not complete till those drawn had been accepted, and that the tax was lawful.

2. A neighboring locality had procured substitutes beyond the number required for its quota, these were transferred to the first township and paid for by the supervisors. The question of the legality of this transaction did not affect the levying of the tax; but would arise as to the disbursement of the tax when raised.

3. A regular proceeding by competent authority to levy and collect a tax, cannot be restrained because errors exist in a disbursement which the tax is to meet.

March 9th 1868. Before STRONG, READ, AGNEW and SHARS-WOOD, JJ. THOMPSON, C. J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Susquehanna county:* In Equity. To January Term 1868, No. 19.

This was a bill in equity, filed January 7th 1865, by Samuel W. Truesdell and others, tax payers in Liberty township, Susquehanna county, against H. P. Snedaker and H. W. Howard, two of the supervisors, and Charles Stanford, collector of taxes of that township.

The plaintiffs averred that besides the two defendant supervisors, David O. Turrell was a duly qualified and acting supervisor; that a call of 500,000 volunteers was made by the President, July 18th 1864, for which, if not filled in fifty days in any particular locality, a draft should be made there; that the quota of Liberty township was 16, of which but 3 were furnished; that on the 28th of September 1864, 26 men were drafted by the proper enrolling officers, and duly notified; that Snedaker and Howard, without the consent of Turrell, the third supervisor, and against his expressed will, on the 15th of October 1864, laid a tax of $4800, to procure substitutes for the men drafted and notified as aforesaid, and not for the purpose of procuring volunteers to fill the quota of the township, and delivered the warrant

of collection to Stanford, who is about to proceed to collect the tax. They further averred that the quota was not filled by re-enlisting veterans who had not been credited to any special locality, and who had originally been credited to Liberty township, or had ever been residents there, or by other volunteers who had been enlisted previously to the draft.

There were other unimportant averments, alleging irregularity in laying the tax.

By amendment to the bill filed April 3d 1865, the plaintiffs averred that the quota of Liberty township was never filled by volunteers who were mustered into the service of the government.

The defendants answered that the number drafted was double the number required to fill the quota of Liberty township; that the 26 drafted men were never required to report for examina-tion, because the quota had been filled before the time for examin-ation; that at a meeting held August 26th 1864, and before the time of the draft, the supervisors resolved to offer and did offer a bounty of $300 to each man enlisting to fill their quota, and levied a tax of $2643.92 to pay such bounties; they admit that Turrell did not assent to the offer, or to laying the tax; they averred that they were informed and believed that their quota had been filled, but did not know whether by veterans such as were referred to in the bill. In answer to interrogatories, they said that eight volunteers, the residue after substitutes furnished by the drafted men, were ob-tained from the borough of Scranton, which had that number of men in excess of its quota; were credited to Liberty township, for each of which eight the supervisors paid to the borough of Scranton $300, and the quota of Liberty township was thus filled; that they paid also $300 to each of those of the drafted men who furnished sub-stitutes for themselves.

An examiner was appointed, who took a large amount of tes-timony, relating principally to the purchase of substitutes from Scranton, and payment for them on behalf of the supervisors. The evidence was uncontradicted that the substitutes had been purchased from Scranton, transferred to Liberty township, and paid for by the supervisors; and that Liberty was relieved from the draft by the transfer. There was evidence also that credit had been given to Liberty township on the provost-marshal's re-cord for the Scranton substitutes, but the evidence was not clear on this point. There was also evidence of bribery and fraudulent combination between the agent of Scranton and the clerk of the provost-marshal to defraud the government; but none bearing on the supervisors or their agents.

The Court of Common Pleas (Streeter, P. J.) dismissed the bill with costs, which on appeal by the plaintiffs was assigned for error.

[Truesdell's Appeal.]

*B. S. Bentley,* with whom was *R. B. Little,* for appellants.—
The power given to local authorities under the Acts of March 25th
and August 25th 1864, Pamph. L. 85, 986, cannot be exercised
*after* the draft: Spear *v.* Blairsville, 14 Wright 150. After the
draft the tax would be for the relief of individuals, and therefore
unconstitutional: Sharpless *v.* Philadelphia, 9 Harris 148 ; Phi-
ladelphia Association *v.* Wood, 3 Wright 73 ; Tyson *v.* Halifax,
1 P. F. Smith 9.

The supervisors had no authority to buy transfers ; the money
should have gone to the treasurer, and been paid out on orders :
Act of March 1864, *supra,* § 11. The money was to be paid
to the volunteers themselves : Gougler *v.* Price, 6 Wright 85 ;
Meek *v.* Bayard, 3 P. F. Smith 217.

*W. H. Jessup,* for appellees. — The law of 1864 justified
bounties to avoid an indiscriminate draft ; Spear *v.* Blairsville,
*supra.* The draft is not finished till the recruit has been accepted :
Debolt *v.* Dunkard, 3 P. F. Smith 214.

The opinion of the court was delivered, March 23d 1868, by
AGNEW, J.—The purpose of this bill is to arrest the collection of
a bounty tax, levied and assessed by the board of supervisors of Lib-
erty township, in the county of Susquehanna, by enjoining against
it. In order to do this the tax must have been levied and ordered to
be collected without jurisdiction or authority on the part of those
who laid it. But the constitutionality of the Bounty Law of March
1864 and its supplements being conceded, the authority of the
supervisors in this case cannot be gainsayed. The President of
the United States had made a call for volunteers on the 18th day
of July 1864, and ordered a draft to take place after the expira-
tion of fifty days thereafter, upon a failure of the number called
out to respond to the call. On the 26th of August following, and
before the time of drafting, the board of supervisors of Liberty
township, acting by a majority of their number, offered a bounty
to volunteers, and agreed to lay a tax to pay it. On the 28th of
September, the first step in the process of drafting was taken, by
drawing from the wheel double the number of persons required to
fill the quota of that township. The process, however, was not
complete, and the persons who should finally go into service were
not yet fixed. The persons thus drawn were required to report
for examination : those who would be found to be exempt by reason
of disability or immunity were yet to be ascertained, and if a
number exceeding the quota was thus relieved, another draft
would be made to fill up the number required. The persons
drawn, therefore, not being fixed in the service, the draft was not
fully complete, and as a consequence the government permitted
volunteers to be received in relief of the locality, from the draft

[Truesdell's Appeal.]

up to the time of final examination and ascertainment of the persons required to go into service, and even then authorized substitution. In consequence of this state of affairs this court held in the cases of Debolt v. Dunkard School District, and Gray v. Richhill District, 3 P. F. Smith 214, that the draft did not cease with the drawing of the names, that its machinery continues at work, and the person on whom the lot thus falls is not yet fixed in the service. That decision was not published at the time this appeal was taken and the argument prepared. It is very clear, therefore, that when the board of supervisors proceeded to levy their tax in pursuance of the offer of a bounty made in the preceding August, and the resolution then to lay the tax, they had jurisdiction and authority to proceed in the premises. The answer and the evidence show that a portion of the quota was properly provided for, and consequently there were objects of the bounty rendering an assessment and collection of taxes necessary. But the struggle in the case arises out of a transfer of men, either seven or eight in number, by one of the wards of the borough of Scranton, alleged to have been made to enable Liberty township to fill out the remainder of its quota. The sum paid for these men it is alleged was improperly paid, and the transfer is said to be a fraudulent arrangement. But the statement of the question shows that it is one relating to the disbursement of the money by the supervisors, and not to their authority to levy and collect the tax. That this number was required to fill the quota, and that the quota was filled somehow by the transfer, honestly or dishonestly, admits of no doubt. If the arrangement for the transfer was a fraud, and the money improperly paid out for the men thus transferred, the controversy belongs to a different forum; but the levy and assessment of the tax were made under a valid authority, and it is not the province of this court, in this mode of proceeding, to decide how much of the tax rightly belongs to this person or to that, and to lay hands upon a regular proceeding to raise money under competent authority, to stay its collection, because errors may exist in the disbursement. The language of our brother Thompson, in a proceeding to restrain the collection of taxes, by bill in equity, in the case of Hughes v. Kline, 6 Casey 231, can well be applied to the case before us. " It will not do to permit the collection of taxes to be interfered with by such process unless in the clearest cases of want of jurisdiction in the assessing or collecting officers. The effects would be mischievous and disastrous."

The decree of the court below dismissing the bill is affirmed with costs.